# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIO QUIJADA,** | : | **CIVIL NO. 1:CV-08-2022** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **WARDEN BLEDSOE, et al.,** | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Plaintiff Mario Quijada ("Quijada"), an inmate confined at the United States Penitentiary in Lewisburg (USP-Lewisburg), Pennsylvania, filed this Bivens[1]-styled civil rights action pursuant to 28 U.S.C. § 1331.  The matter proceeds on an amended complaint filed on September 28, 2009.  (Doc. No. 47).  Named as Defendants are D. Scott Dodrill, Regional Director of the Bureau of Prisons ("BOP"), and the following current or former USP-Lewisburg employees:  Troy Williamson, retired Warden; B.A. Bledsoe, Warden; Frank Strada and Chuck Maiorana, Associate Wardens; Frank Passaniti, Captain; Dean Hollenbach and D. Brewer, Unit Managers; Marwin Reeves, Treatment Specialist; and Marc Houser, Case Manager.  Quijada sets forth allegations with respect to his designation and confinement in USP-Lewisburg's Special Management Unit ("SMU").

Before the Court is a motion to dismiss or, in the alternative, for summary judgment filed on behalf of Defendants.  (Doc. No. 74.)  For the reasons set forth below, the motion will be

---

[1] Bivens actions are the federal counterpart to § 1983 claims brought against state officials. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004)(citing Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials."  Schrob v. Catterson, 948 F.2d 1402, 1409 (3d Cir. 1991).

granted.

## I.      Allegations in Amended Complaint

Quijada states that he was transferred to the SMU program at USP-Lewisburg on

November 16, 2007.[2]  He was informed at that time by Defendants Williamson, Maiorana,

Passaniti, Hollenbach, and Estrada that the SMU program was two years.  He alleges that he was

denied due process with respect to his transfer and confinement in the SMU.  He states that at the

time, the SMU was a program that was not approved or authorized by any BOP program

statement.  He claims that he was forced to "earn back" full privileges when he had committed

no infractions warranting the loss of any privileges.  (Doc. No. 47, Am. Compl. at 7.)  He states

that Defendants Bledsoe, Williamson, Dodrill, Maiorana, Estrada, Passaniti, and Hollenbach all

failed to provide him with his due process rights.  (Id. at 10.)  He claims that each of these

Defendants was involved in the present issues due to his filing of grievances and appeals.

Nevertheless, Defendants have failed to provide him with a hearing regarding his unauthorized

confinement in the SMU.

Quijada alleges that on November 19, 2008, Program Statement 5217.01 was issued with

respect to the SMU.  Despite the issuance of this Program Statement, he claims that he has not

been afforded the Referral Procedures outlined therein, including a hearing.  In the amended

complaint Quijada proceeds to outline all of the due process procedures he believes he is entitled

to pursuant to the SMU Program Statement.[3]  According to Quijada, Defendants Brewer, Houser,

---

[2]  In the amended complaint Quijada gives the date of his transfer as November 18, 2007, but agrees in all subsequent filings that the correct date is November 16, 2007.

[3]  Quijada attaches to his amended complaint a copy of SMU Program Statement 5217.01, as well as a copy of the appeal he filed with the Central Office on April 21, 2009, and the response

and Reeves are the Unit Team members in charge of the SMU program and are responsible for presenting referrals for SMU placement to the warden.  Regional Director Dodrill is thereafter responsible for determining whether each proposed referral is supported by evidence.

According to Quijada, he has been in the SMU at USP-Lewisburg since November 16, 2007, and he was approved for the new SMU program on December 12, 2008.  He states that he still has yet to receive any due process as required by PS 5217.01.  Although he has filed administrative remedies, they have been denied.  Based on the foregoing, he alleges that his rights under the Eighth and Fourteenth Amendments have been violated.   He claims that all of the named Defendants have been personally involved in the violation of his rights in that they are operating and enforcing an SMU program without due process.  As relief he seeks court orders directing his transfer to another United States Penitentiary and dismantling the SMU program. He also requests compensatory and punitive damages.

## II.     Standards of Review

### A.      Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  Under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and construe any inferences to be drawn from the allegations in Plaintiff's favor.  See Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Marangos v. Swett,

---

thereto.  (Doc. No. 47 at 37-52.)

341 F. App'x 752, 755 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

(2009)).  In considering a motion to dismiss under Rule 12(b)(6), a complaint must contain

enough "facts to state a claim to relief that is plausible on its face" Iqbal, 129 S. Ct. at 1949

(quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570 (2007), and the factual allegations

"must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at

555 (internal citations omitted); accord Iqbal, 129 S. Ct. at 1953.  The facts plead must offer

more "than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., 120 S. Ct. at

1949 (internal quotations and citations omitted).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct at 1949 (citing Twombly, 550

U.S. at 556).  Further, a district court should provide leave to amend "when amendment could

cure the deficiency and would not be inequitable." Grayson v. Mayview State Hosp., 293 F.3d

103, 106 (3d Cir. 2002).  A complaint that does not establish entitlement to relief under any

reasonable interpretation is properly dismissed without leave to amend. Id.

### B.      Motion for Summary Judgment

Rule 56(a) provides that the court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law.[4]  A fact is "material" if it will "affect the outcome of the suit under the

---

[4] Amendments to the Federal Rules of Civil Procedure became effective on December 1,
2010.  The oft-cited summary judgment standard is now located in Rule 56(a) rather than Rule 56(c).
Although the wording of the standard has changed slightly, replacing the word "issue" with
"dispute" ("The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact"), this change does not affect the substantive standard or the
applicability of prior decisions construing the standard.  Fed. R. Civ. P. 56(a) advisory committee's
note.

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id. at 250.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence.  All reasonable inferences are also to be resolved in favor of the moving party.  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).   However, "a mere scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 249.  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a fair-minded jury could reasonably decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250.  The non-movant "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

### III.    Discussion

#### A.    Motion to Dismiss

#### 1.    Damages against Defendants in their official capacities

Sovereign immunity precludes Quijada from bringing a <u>Bivens</u> action for money damages against Defendants in their official capacity as federal agents.  <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); <u>Lewal v. Ali</u>, 289 F. App'x 515, 516 (3d Cir. 2008) (noting that claims against federal agents in their official capacities are claims against the United States and, as such, are barred by sovereign immunity).  Thus, Quijada's <u>Bivens</u> claims against Defendants in their official capacities will be dismissed with prejudice.[5]

#### 2.    Personal Involvement/Respondeat Superior

Liability in a <u>Bivens</u> action may only be based upon a demonstration by Quijada that the alleged deprivation of federal rights was committed by a person acting under the color of law.  See <u>West v. Atkins</u>, 487 U.S. 42, 48-49 (1989).[6]  Liability may only be based upon a defendant's personal involvement in conduct amounting to a constitutional violation.  <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  Liability in a <u>Bivens</u> action may not be based on <u>respondeat</u> <u>superior</u>.  <u>Ashcroft</u>, 129 S. Ct. at 1948.  "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  <u>Id.</u> at 1949.  The

---

[5]  In his brief in opposition to Defendants' motion, Quijada appears to concede on this point. (Doc. No. 85 at 23.)

[6]  Although the <u>West</u> case concerned a violation under  42 U.S.C. § 1983, the principles and analysis applicable to § 1983 actions are equally applicable to <u>Bivens</u>-type actions.  See <u>Schrob</u>, 948 F.2d at 1408-09.

complaint must contain averments of the involvement of the defendants in the conduct which caused a violation of the plaintiff's constitutional rights.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Defendants argue that with the exception of Defendant Dodrill, who is employed as Regional Director of the BOP, all of the remaining Defendants named in this action are BOP staff members at USP-Lewisburg.  As such, it is clear that none of the Defendants had any involvement in any decision to transfer Quijada from USP-Lee to the SMU Program at USP-Lewisburg.  Defendants further argue that Quijada does not identify the specific constitutional violations committed by each of the named Defendants other than to repeatedly complain that Defendants denied the administrative remedies he filed challenging his SMU placement.

To the extent Quijada seeks to impose liability on the basis of Defendants' actions in responding to administrative remedies and appeals challenging the decision to transfer him from USP-Lee to the SMU Program at USP-Lewisburg, he fails to state a viable Bivens claim.  It is well established that contemporaneous knowledge and acquiescence in an alleged violation is required to establish personal knowledge.  Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal knowledge.  See Rode, 845 F.2d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006).

Based on the foregoing, Defendants argue that they did not have any personal involvement in the decision to transfer Quijada from USP-Lee to the SMU Program at USP-Lewisburg, even if they did deny administrative remedies concerning the matter.  As such, they seek the dismissal of the amended complaint in its entirety.  The Court agrees that Defendants did not have any personal involvement in the decision to initially transfer Quijada.  However,

while certainly not a model of clarity, the amended complaint can be read to allege that

Defendants are operating an SMU program without due process in violation of P.S. 5217.01, and

subjecting Quijada to cruel and unusual punishment in violation of the Eighth Amendment.[7]

(Doc. No. 47 ¶¶ 70-71, 124; p. 34.)  Whether these claims have any merit is a separate issue, but

the Court finds the allegations are sufficiently stated for purposes of the personal involvement

inquiry.

### B.    Motion for Summary Judgment

### 1.    Undisputed facts[8]

Quijada is a federal inmate who was transferred from the United States Penitentiary in

Lee, Virginia, to the SMU at USP-Lewisburg on November 16, 2007.  (Doc. No. 79, Ex. 1,

Cunningham Decl. ¶ 2; Doc. No. 86, Pl.'s SMF ¶ 24.)  The SMU at USP-Lewisburg began

accepting inmates in September 2002.  ( Doc. No. 79, Ex. 1 at ¶ 3.)  Until 2009, the SMU at

---

[7]   To the extent Quijada attempts to set forth an Equal Protection claim, this claim is also
subject to dismissal.  While he generally asserts that he was denied equal protection, he fails to
assert that he is a member of a protected class that is treated differently than other individuals.
Further, he fails to set forth any allegations as to how he may have been treated differently from
other similarly situated prisoners.  See Cleberne v. Cleberne Living Ctr., 473 U.S. 432, 440 (1985);
Artway v. Attorney General, 81 F.3d 1235, 1267 (3d Cir. 1996); Wilson v. Schillinger, 761 F.2d
921, 929 (3d Cir. 1985).

[8]   Along with their motion Defendants filed a Statement of Material Facts in accordance with
M.D. Pa. L.R. 56.1.  (Doc. No. 79.)  While Defendants maintain that Quijada has failed to submit an
opposing Statement of Material Facts as required by M.D. Pa. L.R. 56.1, the docket reveals
otherwise.  On September 13, 2010, Quijada filed a document entitled "Motion of Statement of
Material Facts."  (Doc. No. 86.)  While it fails to respond to the numbered paragraphs set forth in
Defendants' statement or to reference relevant parts of the record, the Court will construe Quijada's
filing liberally and extract any opposing facts set forth therein that have support in the record.
However, the Court notes that the majority of paragraphs set forth in Quijada's submission actually
set forth legal argument, and not facts.  As such, any properly supported facts set forth by
Defendants and not controverted by Quijada will be deemed admitted.

USP-Lewisburg was confined to one housing unit with approximately 100 inmate participants at any given time.  (Id.)  The SMU concept was implemented to manage inmates who have been involved in or played a leadership role in a disruptive incident involving some type of gang activity (racial, geographic or otherwise), or who have an extensive disciplinary history at their parent institution.  (Id. ¶ 4.)  In 2009, the BOP expanded the SMU program at USP-Lewisburg, and it became an institution-wide program.  (Id. ¶ 5.)  Prior to the expansion of the SMU program, the BOP issued P.S. 5217.01, Special Management Units, which became effective on November 19, 2008.  (Id.; Attach. 1, Program Statement 5217.01.)

SMU designation is non-punitive, and may be appropriate for any inmate who has, inter alia, participated in a disruptive geographical group/gang-related activity, had a leadership role in disruptive geographical group/gang-related activity, or has a history of serious and/or disruptive disciplinary infractions.[9]  (Id., Attach. 1 at 1-2.)  P.S. 5217.01 sets forth "referral procedures" for inmates who were referred for SMU participation after its effective date on November 19, 2008.  (Id., Cunningham Decl. ¶ 5; Attach. 1 at 2-4.)   P.S. 5217.01 also requires that an additional notice to inmates, like Quijada, who were already designated to the SMU Program when the Statement became effective.  It states as follows:

> Notice for Current SMU Inmates.  Inmates currently in a SMU are provided the BP-A0937, Notice to Inmate of Designation to a [SMU] (available on Sallyport).  This Notice informs the inmate of the right to appeal the designation decision and the inmate's individual conditions of confinement.

(Id. ¶ 6; Attach. 1 at 4.)

---

[9]  Throughout his filings, Quijada refers to his confinement in the SMU as disciplinary and punitive.   However, he fails to submit any evidentiary materials in support of his assertion.

Quijada received the Notice to Inmate of Designation to a SMU on December 12, 2008.

(Id. ¶ 7; Attach. 2, Notice to Inmate of Designation to a Special Management Unit.)  This

December 12, 2008 Notice to Quijada provided as follows:

> NOTICE: This notice informs you of your designation to a Federal
> Bureau of Prisons (Bureau) facility that allows greater
> management of your interaction with other inmates.  Your
> designation to this unit provides you the opportunity to develop the
> skills necessary for successfully coexisting with other inmates in a
> general population.  Your general conditions of confinement in this
> unit may be restricted as necessary to provide greater management
> of your interaction with other inmates.  Your designation to this
> unit, by itself, will have no effect on the length of your
> incarceration.  You will continue to earn good-conduct sentence
> credit in accordance with Bureau policy.
>
> Your placement into the [SMU] was based on a large scale
> disturbance at USP Lee, involving more than 50 members of the
> Security Threat Groups, Paisas and Tangos.  You were identified
> as a leader of the Paisas and a principal participant in the
> disturbance.
>
> Based on this information, your designation to this unit for greater
> management of your interaction with other inmates is necessary to
> the safe, secure, and orderly operation of Bureau institutions, or
> protection of the public.  Your continued designation to this unit
> will be reviewed regularly by your Unit Team under circumstances
> providing you notice and an opportunity to be heard, in accordance
> with the Bureau's Inmate Classification and Program Review
> policy.
>
> OPPORTUNITY TO APPEAL DESIGNATION DECISION -
> You may appeal ths designation decision, or any conditions of
> your confinement, through the Bureau's Administrative Remedy
> Program, 28 C.F.R. §§ 542.10 through 542.19, and corresponding
> policy.  A member of your Unit Team will provide you with the
> necessary forms upon request.

(Doc. No. 79, Ex. 1, Attach. 2, Notice to Inmate of Designation to a Special Management Unit.)

Quijada does not dispute receiving this notice or thereafter availing himself of the

administrative remedy process to appeal his SMU designation, and other issues related to the

conditions of his confinement in the SMU.  (Doc. No. 47, Am. Compl. at 37-40.)  Rather, he

argues that despite this section of the Program Statement he should have been provided with the

notices and hearing outlined in the "Referral Procedures" section of the P.S. 5217.01.  With

respect to Quijada's Central Office Administrative Remedy Appeal, the Administrator of

National Inmate Appeals responded, in relevant part, as follows:

> You were placed in a SMU because of your involvement in a large
> scale disturbance at USP Lee involving more than 50 members of
> the Paisas and Tangos.  You were identified as the leader of the
> Paisas and a leader/principal participant in the disturbance.
> Accordingly, you participated in or were associated with a
> disruptive activity such that greater management of your
> interaction with other persons is necessary to ensure the safety,
> security and orderly operation of the Bureau facilities, or
> protection of the public .  . . .
>
> A review of your case indicates you meet the eligibility criteria for
> the SMU Program.  SMU inmates are reviewed by the Unit Team
> in conjunction with regularly scheduled program reviews.  We find
> your placement appropriate and encourage your participation.
> Accordingly, your appeal is denied.

(Id. at 39-40.)

With respect to the conditions of confinement in the SMU, P.S. 5217.01 provides as

follows:

> Conditions of confinement for SMU inmates will be more
> restrictive than for general population inmates.  An inmate's
> individual conditions will be limited in accordance with this policy
> as necessary to ensure the safety of others, to protect the security
> and orderly operation of the institution, or protection of the public.

(Doc. No. 79, Ex. 1, Attach. 1 at 5.)


**2.      Due Process Claim regarding confinement in SMU**

11

Quijada claims that Defendants have violated his rights under the Fourteenth Amendment by denying him due process with respect to his confinement in the SMU.  However, since he is a federal inmate claiming constitutional violations by federal officials, his Fifth Amendment due process rights are implicated.  The Fifth Amendment provides that "[n]o personal shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  A due process claim requires a two part analysis.  First, a court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000.)  Second, if the interest is protected by the due process clause, "the question then becomes what process is due to protect it."  Id.

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).  However, a due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations."  Id. at 222.  In the past, in determining whether prison regulations created liberty interests, courts examined the regulation for explicitly mandatory language giving rise to a reasonable expectation that an event would not occur unless the circumstances identified in the regulation were met.  Hewitt v. Helms, 459 U.S. 460, 472 (1983).  However, in Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court modified the Hewitt analysis when addressing the question of when state prison regulations can create liberty interests protected by the Due Process Clause.  Specifically, the Sandin Court held that:

States may under certain circumstances create liberty interests which are

> protected by the Due Process Clause.  But these interests will be generally
> limited to freedom from restraint which, while not exceeding the sentence
> in such an unexpected manner as to give rise to protection by the Due
> Process Clause of its own force, nonetheless imposes atypical and
> significant hardship on the inmate in relations to the ordinary incidents of
> prison life.

Id. at 483-84.[10]  Stated another way, a liberty interest arises from the Due Process Clause only where the conditions or degree of confinement to which the inmate is subjected are beyond the sentence imposed upon him or otherwise violate the Constitution.  Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citing Hewitt, 459 U.S. at 468).  The court must inquire into the specific facts of the case regarding the duration of the confinement and the conditions of that confinement in relation to other prison conditions.  Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003).

In the instant matter, while Quijada has been confined in the SMU since November 2007, he has produced no evidence demonstrating that he has been subjected to confinement that has exceeded the sentence imposed upon him or otherwise violated the Constitution.  There is no evidence that his transfer to the SMU resulted in a loss of good conduct time credits or otherwise altered his sentence.[11]

Quijada initially argues that at the time of his transfer to the SMU program, the program was unauthorized by the BOP because there was no Program Statement governing its operation.

---

[10]  While Sandin addressed state-created liberty interests under the Fourteenth Amendment, its reasoning applies equally to Fifth Amendment due process claims brought by federal prisoners pursuant to Bivens.  Crowder v. True, 74 F.3d 812, 814-15 (7th Cir. 1996).

[11]  Inmates are expected to complete the four-level SMU program in 18-24 months.  However, inmates who fail to make satisfactory progress may be returned to a previous level.  (Doc. 79, Ex. 1, PS 5217.01.)

He further maintains that the SMU program now operates under an unconstitutional BOP

Program Statement that subjects him to atypical and significant hardship.  These arguments are

without merit.  First, an inmate's challenge to the lack of approved BOP standards or criteria for

operating the SMU has been found as not implicating a liberty interest.  See McKettrick v.

Williamson, No. 06-0543, 2006 WL 1307929, at *3-9 (M.D. Pa. Mar. 22, 2006).  Moreover, the

violation of a BOP policy manual, i.e., P.S. 5217.01, is not the basis for a constitutional claim.

See Gross v. Warden, No. 07-1921, 2008 WL 1815307, at *2 n.2 (M.D. Pa. Apr. 21, 2008).

To the extent Quijada argues that the SMU program operates under an unconstitutional

BOP program statement that subjects him to atypical and significant hardship, the undisputed

record undermines his claim.  First, it is well established that inmates do not have a liberty

interest under the Due Process Clause with respect to any particular custody classification in

prison, i.e., general population as opposed to a more restrictive custody in the SMU program.

See Hewitt, 459 U.S. at 468 ("It is plain that the transfer of an inmate to less amenable and more

restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily

contemplated by a prison sentence."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997).

However, as previously stated, inmates do have a liberty interest in avoiding transfer to facilities

where the conditions impose "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  In the instant case, Quijada fails to

come forward with any evidence that the conditions in the SMU at USP-Lewisburg are

unreasonable or disproportionate to those in other federal prisons and that they impose an

atypical and significant hardship on him in relation to the ordinary incidents of prison life.

The undisputed facts demonstrate that the SMU is not punitive in nature but rather is

designed to provide additional programming opportunities for inmates involved in disciplinary

incidents.  Other than his unsupported allegations that he was denied adequate nutritional

supplements and that his vital signs were not properly checked during a hunger strike, Quijada

fails to set forth any claims with respect to the conditions of confinement in the SMU.  Rather,

he repeatedly asserts that the denial of a hearing alone subjects him to atypical and harsh

confinement.  It has been found that the use of restrictions to promote the pro-social behavior of

inmates falls within the parameters of a sentence imposed by a court of law.  See Francis v.

Dodrill, et al., No. 04-1694, 2005 WL 2216582, at *5 (M.D. Pa. Sept 12, 2005).  In the instant

case Defendants have shown, and Quijada does not dispute, that he was transferred from USP-

Lee to the SMU at USP-Lewisburg due to his history of being identified as a gang leader and a

principal participant in a large-scale disturbance at USP-Lee that involved more that fifty

members of Security Threat Groups.  (Doc. No. 85, Pl.'s Opp'n Br. at 5.)  The mere placement

or confinement in the SMU does not raise a reasonable inference that Quijada is subject to an

atypical and significant hardship in relation to the ordinary incidents of prison life.  See Harrison

v. Bledsoe, No. 09-1600, 2010 WL 186804, at *3 (M.D. Pa. Jan. 13, 2010).  There exists no

disputed fact that Quijada received the notice and appeal opportunities for those inmates housed

in the SMU prior to the issuance of the Program Statement as required by P.S. 5217.01(3)(e),

and that he is not subjected to atypical or significant conditions in the SMU.[12]  Accordingly, the

---

[12]  In an effort to create an issue of fact with respect to the due process issue, Quijada submits the declarations made under penalty of perjury of three (3) USP-Lewisburg inmates confined in the SMU.  (Doc. Nos. 87, 92)  He submits the declarations for the purpose of demonstrating that these inmates were provided with hearings prior to their designation to the SMU.  However, two of the inmates received hearings because they were each new referrals to the SMU subsequent to the issuance of the Program Statement, and as such, progressed through the initial referral procedures as set forth in P.S. 5217.01(3).  While the third inmate may have been designated to the SMU Program

summary judgment is warranted in favor of Defendants with respect to Quijada's due process claim.

### 3.      Eighth Amendment Claim

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986). Unnecessary and wanton inflictions of pain include those that are totally without penological justification.  Hope v. Pelzer, 536 U.S. 730, 737 (2002).  Prison officials may not house inmates under conditions that deprive them of one or more basic human needs.  Helling v. McKinney, 509 U.S. 25, 32 (1993).  In addressing an Eighth Amendment conditions of confinement claim, the United States Supreme Court has stated that the Constitution does not mandate comfortable prisons.  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  In determining whether conditions are cruel and unusual, the court must look to the "evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S at 346.

To establish an Eighth Amendment claim an inmate must demonstrate that he has been deprived of "the minimal civilized measure of life's necessities."  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (quoting Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)).  He must show that the conditions to which he is subjected pose "a substantial risk of serious harm" to his health or safety.  Farmer, 511 U.S. at 834.  Factors to be considered in making this determination

---

prior to the effective date of the Program Statement, but later received a hearing, this does not create a disputed issue of fact with respect to the matter of what process was due to Quijada.  A liberty interest arises from the Due Process Clause only where the conditions or degree of confinement to which the inmate is subjected are beyond the sentence imposed upon him or otherwise violate the Constitution.  The undisputed facts demonstrate that such is not the case here.

include the duration of the inmate's exposure to the condition as well as the "totality of the circumstances."  Rhodes, 452 U.S. at 362-63.  While some conditions alone would not establish an Eighth Amendment violation, conditions in combination may indeed do so.  See Wilson v. Seiter, 501 U.S. 294, 304-05 (1991).

In addition to demonstrating conditions that pose a significant risk of serious harm, to establish an Eighth Amendment claim the inmate must also show that the person or persons responsible for the conditions of confinement acted with deliberate indifference.  Deliberate indifference is found where a prison official knew of and disregarded an excessive risk to an inmate's health or safety.  Farmer, 511 U.S. at 837.  "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."  Hope, 536 U.S. at 738. In deciding an inmate's claim of cruel and unusual punishment, it must also be remembered that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Whitley v. Albers, 475 U.S. 312, 321 (1986) (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979).

In the amended complaint Quijada asserts generally that he has been subjected to cruel and unusual punishment in violation of the Eight Amendment.  He fails to allege the personal involvement of each individual Defendant with respect to any Eighth Amendment violation.  At most, it appears that he generally seeks to impose Eighth Amendment liability upon the Defendants as a group based upon their alleged failure to provide him with a hearing thereby, in his opinion, subjecting him to atypical and significant hardship.  Such a deprivation fails to constitute cruel and unusual punishment as defined by the legal precedent outlined above.  The

only other allegations set forth in the amended complaint that could possibly be construed to claim violations of the Eighth Amendment are Quijada's assertions that since in the SMU he has lost his freedom to be in general population, has had to earn back full privileges, and is not provided with educational courses.  (Doc. No. 47 at 7.)  However, none of these factors, even in combination, rise to the level of an Eighth Amendment violation.  As previously discussed, an inmate has no constitutional right to any particular custody classification.  A transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.  See Hewitt, 459 U.S. at 468. It is also well-settled that prisoners do not have a constitutionally protected right to rehabilitative and education programs.  See Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1997); Padgett v. Stein, 406 F. Supp. 287, 296 (M.D. Pa. 1975); Hayes v. Cuyler, 475 F. Supp. 1347, 1350 (E.D. Pa. 1979).  While Quijada may prefer not to be confined in the SHU under more restrictive conditions, he has neither alleged nor produced evidence that any of the conditions jeopardize or potentially jeopardize his health and safety in violation of the Eighth Amendment.  Accordingly, summary judgment is warranted in favor of Defendants with respect to the Eighth Amendment claim.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARIO QUIJADA,** | : | **CIVIL NO. 1:CV-08-2022** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| **WARDEN BLEDSOE, et al.,** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

**AND NOW, THEREFORE, THIS 31ˢᵗ  DAY OF MARCE, 2011,** in accordance with

the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.    Defendants' motion to dismiss or, in the alternative, for summary judgment (Doc. No. 74) is **GRANTED**.

2.    The Clerk of Court is directed to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff.

3.    The Clerk of Court is further directed to **CLOSE** this case file.


S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania